1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10  JOHN B. WALLACE,                                 )    Civil No. 09cv2785-L(RBB)
                                                     )
11               Plaintiff,                          )    **ORDER GRANTING IN PART AND**
                                                     )    **DENYING IN PART DEFENDANT'S**
12  v.                                               )    **MOTION FOR SUMMARY**
                                                     )    **JUDGMENT**
13  BUSCH ENTERTAINMENT                              )
    CORPORATION,                                     )
14                                                   )
                 Defendant.                          )
15  _____          )

16       In this personal injury action, Defendant filed a motion for summary judgment, which

17  Plaintiff opposed. For the reasons which follow, Defendant's motion is **GRANTED IN PART**

18  **AND DENIED IN PART**.

19       Plaintiff, a California attorney proceeding *pro se*, was injured at SeaWorld San Diego,

20  which is allegedly owned and operated by Defendant. Plaintiff purchased a ticket to use the

21  bungee trampoline ("Equipment") at the Xtreme Zone of the park. Before obtaining permission

22  to use the Equipment, Plaintiff was required to and did read and sign a liability waiver

23  ("Release"). A SeaWorld employee ("Attendant") was then assigned to Plaintiff. He outfitted

24  Plaintiff with a harness, which was placed around his waist, and two bungee cords, one

25  connected to each hip. The Attendant instructed Plaintiff not to flip until the Attendant

26  determined that it was safe to do so. When the Attendant instructed him to do so, Plaintiff

27  started to flip. Before and when he began to flip, Plaintiff's arms were outstretched as he held

28  on to the bungee cords. On his first and only flip, Plaintiff experienced pain in his left arm. He

1 immediately stopped and left the Equipment to seek first aid.  Plaintiff later learned he had torn a

2 tendon in his left biceps.

3      Plaintiff filed a negligence action in state court.  Defendant removed it to this court based

4 on diversity.  Subsequently, Plaintiff amended the complaint.  In the operative complaint,

5 Plaintiff alleged claims for strict products liability – design defect, strict products liability –

6 failure to warn, breach of express warranties – intended use, breach of implied warranties –

7 intended use, negligent products liability – design defect, negligent products liability – failure to

8 warn, declaratory judgment, gross negligence, negligence *per se* and negligence.

9      Defendant moved for summary judgment.  Rule 56 of Federal Rules of Civil Procedure

10 empowers the court to enter summary judgment on factually unsupported claims or defenses,

11 and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex*

12 *Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the

13 pleadings, depositions, answers to interrogatories, and admissions on file, together with the

14 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

15 party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

16      The moving party's burden on summary judgment depends on whether it bears the burden

17 of proof at trial with respect to the claim or defense at issue.  "When the party moving for

18 summary judgment would bear the burden of proof at trial, it must come forward with evidence

19 which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a

20 case, the moving party has the initial burden of establishing the absence of a genuine issue of

21 fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden*

22 *Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  If the moving party

23 does not bear the burden at trial, it can meet its burden on summary judgment by pointing out the

24 absence of evidence with respect to any one element of the claim or defense. *See Celotex*, 477

25 U.S. at 325.

26      If the movant meets its burden on summary judgment, the burden shifts to the nonmovant

27 to show summary adjudication is not appropriate. *Celotex*, 477 U.S. at 317, 324.  In this regard,

28 the nonmovant must "go beyond the pleadings" and rely on "evidentiary materials" such as his

1   "own affidavits, or . . . the depositions, answers to interrogatories, and admissions on file" to

2   designate specific facts in opposition to the summary judgment motion. *Celotex*, 477 U.S. at 324

3   (internal quotation marks omitted).  These evidentiary materials must show that genuine factual

4   issues remain which "can be resolved only by a finder of fact because they may reasonably be

5   resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

6   The nonmovant does not meet this burden by showing "some metaphysical doubt as to material

7   facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

8   When ruling on a summary judgment motion, the nonmovant's evidence is to be believed,

9   and all justifiable inferences are to be drawn in his or its favor. *Anderson*, 477 U.S. at 255.

10   Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate

11   inferences are jury functions, and are not appropriate for resolution by the court on a summary

12   judgment motion. *Id.*

13   Defendant moved for summary judgment, arguing essentially that the claims are

14   precluded by the doctrine of assumption of risk, that the products liability and breach of

15   warranty doctrines do not apply to it and that, to the extent not barred by these legal theories,

16   Plaintiff lacks evidence to prove his claims.  California substantive law applies in this diversity

17   action. *See Intri-Plex Technol., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) &

18   *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

19   Defendant argues Plaintiff's gross negligence claim should be dismissed for lack of

20   evidence and that his remaining negligence claims are barred by the doctrine of contractual

21   express assumption of risk.  "An express assumption of risk is a complete defense to a

22   negligence claim." *Moser v. Ratinoff*, 105 Cal. App. 4th 1211, 1217 (2003).  It is undisputed

23   that Plaintiff signed a Release waiving claims connected to his use of the Equipment.

24   Plaintiff argues that the Release should not be enforced under California's public policy

25   to protect consumers from injuries caused by defective products.[1]  Generally California courts

26

27   [1]     To the extent the complaint alleges claims for strict products liability (first and
28   second causes of action) as opposed to negligent products liability (fifth and sixth causes of
     action), the strict liability claims are addressed separately below.

1  have "concluded categorically that private agreements made in the recreational sports context

2  releasing liability for future ordinary negligence do not implicate the public interest and

3  therefore are not void as against public policy." *City of Santa Barbara v. Super. Ct. (Janeway)*,

4  41 Cal.4th 747, 760 (2007) ("*Janeway*") (citing cases) (internal quotation marks and citations

5  omitted).

6         Plaintiff specifically contends, however, that his case presents a public safety issue rather

7  than a recreational activity issue because Defendant's activity was regulated under the

8  Permanent Amusement Ride Inspection Program, Cal. Labor Code § 7920 *et seq.*, which

9  includes multiple requirements to ensure equipment safety and proper training of employees,

10 *see, e.g., id.* §§ 7923-27; 8 Cal. Code of Reg. § 3195.3 *et seq.*  Releases are not effective to

11 shield against liability for statutory violations.  *Capri v. L.A. Fitness Int'l, LLC*, 136 Cal. App.

12 4th 1078, 1085 (2006), citing Cal. Civ. Code § 1668.

13        This issue is raised in the first amended complaint, where Plaintiff alleged Defendant's

14 business was regulated under laws pertaining to amusement parks and violated pertinent legal

15 requirements.  (First Am. Compl. at 15, 23 (negligence *per se*).)  In its motion, Defendant argues

16 Plaintiff cannot maintain a claim of negligence *per se* for two reasons.

17        First, Plaintiff testified he was "not aware of any laws, statutes, or regulations that

18 [Defendant] breached or allegedly violated in connection with the bungee trampoline ride."

19 (Joint Statement at 5.)  Defendant argues for summary judgment based on this testimony. The

20 purpose of discovery, including depositions, is to elicit evidence rather than legal argument.

21 Plaintiff's testimony therefore does not preclude him from making a legal argument in

22 opposition to Defendant's summary judgment motion.  Defendant's first argument is therefore

23 rejected.

24        Second, Defendant points to Certificates of Compliance, which show that its Equipment

25 met the requirements of Title 8, California Code of Regulations Section 344.7(b).  (Burton Decl.

26 at 2 & Exh. 4.)  The certificates show that the Equipment passed a safety inspection.  *See* 8 Cal.

27 Code Reg. § 344.7(b).  Plaintiff does not contend that the Equipment failed to pass a safety

28 inspection.  He argues that the Attendant was not trained on the safe use of the Equipment as

1   required by law.  He suggests Defendant violated the Permanent Amusement Ride Inspection

2   Program because his Attendant failed to instruct him not to grip the bungee cords.  (*See* Wallace

3   Decl. ¶ 2; Suppl. Wallace Decl. at 2.)  This evidence supports a reasonable inference that the

4   Attendant was not properly trained on how to safely use the Equipment.  *See Anderson*, 477 U.S.

5   at 255 (all justifiable inferences drawn in the nonmovant's favor).  Defendant did not address

6   this argument in his reply.  Accordingly, there is a genuine issue of fact whether Defendant

7   violated the Permanent Amusement Ride Inspection Program and thus precluded reliance on the

8   Release as a defense to negligence *per se*.

9          In the alternative, Defendant relies on the doctrine of primary assumption of the risk,

10  another "exception to the general rule of due care frequently applied in cases involving sports."

11  *Eriksson v. Nunnink*, 191 Cal. App. 4th 826, 838 (2011).

12          Primary assumption of the risk means that the plaintiff has voluntarily participated
            in a sport that includes various inherent risks, and therefore, the defendant is
13          relieved of his or her duty to use due care to avoid the plaintiff suffering an injury
            as a result of those inherently risky aspects of the sport.  The question of whether a
14          defendant should be relieved of his or her duty is a question of law and policy.  A
            court must evaluate (1) the fundamental nature of the sport, and (2) the defendant's
15          relationship to the sport, in order to determine if the defendant should be relieved
            of his or her general duty of care.  As a matter of policy, a duty should not be
16          imposed where doing so would require that an integral part of the sport be
            abandoned, or would discourage vigorous participation in sporting events.  If the
17          defendant is relieved of his or her duty of care, then the plaintiff's negligence cause
            of action is barred.

18

19  *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082-83 (2011) (internal quotation

20  marks and citations omitted).

21          The issue presented by Plaintiff is whether risk of injury resulting from gripping bungee

22  cords with outstretched arms is inherent in bungee jumping on a trampoline.  Whether a

23  particular risk is an inherent part of a recreational activity is an issue of law "necessarily reached

24  from the common knowledge of judges."  *Rosencrans*, 192 Cal. App. 4th at 1083 (citation

25  omitted).  Bungee trampoline jumping is an activity where persons tethered to bungee cords use

26  a trampoline to jump and flip in the air.  Given the nature of the activity, injuries to arms arising

27  from flipping appear to be an inherent risk.  However, as an owner/operator offering this

28  recreational activity, Defendant has a duty to provide a reasonably safe facility.  *See id*. at 1084;

1 *Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354, 364-66 (2001).  This duty requires Defendant

2 to minimize the risks insofar as possible without altering the nature of the sport. *Rosencrans*, 192

3 Cal. App. 4th at 1084 (internal quotation marks and citations omitted); *see also Solis*, 94 Cal.

4 App. 4th at 364-66.  Plaintiff claims he was injured because he performed a flip while gripping

5 the bungee cords with outstretched arms, when he should have been instructed to hold his

6 elbows at his side and not to grip the bungee cords but the black straps offered for this purpose.

7 (Wallace Decl. ¶ 2; Wallace Suppl. Decl. at 2-3.)  The Attendant cleared Plaintiff to flip without

8 providing these instructions and assuring Plaintiff's compliance before clearing him.  (*See*

9 Wallace Decl. ¶ 2; Suppl. Wallace Decl. at 2-4.)  Instructing the participants would not require

10 them to abandon the integral part of the activity, *i.e.*, jumping on a trampoline while tethered to

11 bungee cords, but would likely minimize the risk of injury.  (See Wallace Decl. ¶3 and

12 discussion below regarding causation.)

13 Accordingly, Plaintiff raised a genuine issue of fact with respect to primary assumption of

14 the risk as it pertains to his ninth cause of action for negligence *per se*.  Because there is a

15 genuine issue of fact whether the Release or the primary assumption of the risk bar Defendant's

16 liability on this claim, its motion is **DENIED** in this respect.

17 Defendant maintains summary judgment should be granted on the gross negligence claim

18 because Plaintiff has no evidence to support gross negligence or that the alleged gross

19 negligence caused his injury.  The court disagrees.

20 Plaintiff's evidence consists of his affidavits and excerpts from the manufacturer's and

21 Defendants' internal instructions for the safe operation of the Equipment.  Defendant objected to

22 almost every part of Plaintiff's affidavits. (Evidentiary Objections to Decl. of John Wallace;

23 Evidentiary Objections to Suppl. Decl. of John Wallace.)  Unless expressly noted otherwise

24 herein, the objections are overruled.  Plaintiff is competent to provide evidence about what

25 transpired during the incident in which he was involved.  Furthermore, he is competent to

26 provide evidence about his injury and how he sustained it.  Although Plaintiff could have offered

27 evidence from an expert, he was not required to do so.  *See* Fed. R. Evid. 702 (expert opinion

28 *may* be offered (emphasis added).)  Defendant has not cited any binding authority to the

6                                                                09cv2785

1   contrary.  Furthermore, Plaintiff's evidence is not precluded by Federal Rule of Evidence 701.

2   To the extent Defendant argues that Plaintiff's affidavits lack credibility or are factually

3   inaccurate, this is not an issue for summary judgment.  *See Anderson*, 477 U.S. at 255.

4   Defendant also argues that Plaintiff's reliance on safety manuals and operating procedures is

5   irrelevant.  To the contrary, the manufacturer's manual and the defendant's own procedures are

6   relevant and can be used to raise a genuine issue of fact regarding gross negligence.  *See, e.g.,*

7   *Rosencrans*, 192 Cal. App. 4th at 1086-87 (reliance in part on safety manual and the defendant's

8   internal training procedure consistent with the manual).

9          Gross negligence was expressly excluded from the Release.  (Joint Statement at 3.)  Even

10  if it were not, as a matter of law, a release is not enforceable against gross negligence because

11  "public policy generally precludes enforcement of an agreement that would remove an

12  obligation to adhere to even a *minimal* standard of care."  *Janeway*, 41 Cal.4th at 777, 759

13  (footnote omitted, emphasis in original), citing *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92,

14  101, 104 (1963).

15         Gross negligence is not so much a cause of action as it is a "limitation on the defense that

16  is provided by a release."  *See Janeway*, 41 Cal.4th at 780 n.58; *see also Eriksson*, 191 Cal. App.

17  4th at 857 n.18 (no distinct cause of action for gross negligence under California law absent

18  statutory basis).  Plaintiff is not required to anticipate the defense of release; "instead, the

19  defendant bears the burden of raising the defense and establishing the validity of a release as

20  applied to the case at hand."  *Janeway*, 41 Cal.4th at 780 n.58.

21         Gross negligence is different from ordinary negligence in that ordinary negligence

22  "consists of a failure to exercise the degree of care in a given situation that a reasonable person

23  under similar circumstances would employ to protect others from harm," whereas gross

24  negligence requires "a want of even scant care or an extreme departure from the ordinary

25  standard of conduct."  *Janeway*, 41 Cal.4th at 753-54 (internal quotation marks and citations

26  omitted.)  Summary judgment may be granted when the claim does not amount to more than

27  ordinary negligence, although, generally, "it is a triable issue of fact whether there has been such

28  a lack of care as to constitute gross negligence."  *Id*. at 767, quoting *Decker v. City of Imperial*

1   *Beach*, 209 Cal. App. 3d 349, 358 (1989).

2       Defendant argues Plaintiff cannot show gross negligence because he does not contend

3 that Defendant intentionally caused him harm or knowingly did anything to put him in harm's

4 way.  (*See* Joint Statement at 4-5.)  Intent or knowledge are not required to show gross

5 negligence.  What is required is "a want of even scant care or an extreme departure from the

6 ordinary standard of conduct."  *Janeway*, 41 Cal.4th at 753-54 (internal quotation marks and

7 citations omitted.)  This "connotes such a lack of care as may be presumed to indicate a passive

8 and indifferent attitude toward results."  *Eriksson*, 191 Cal. App. 4th at 857 (internal quotation

9 marks, ellipsis and citation omitted).  "[M]ost courts have considered that 'gross negligence'

10 falls short of a reckless disregard of consequences, and differs from ordinary negligence only in

11 degree, and not in kind."  *Decker*, 209 Cal. App. 3d at 358.  That Plaintiff does not contend

12 Defendant harmed him intentionally or knowingly therefore does not preclude him from raising

13 a genuine issue whether Defendant was grossly negligent.

14       According to Plaintiff, Defendant provided him with an Attendant who assisted him in

15 strapping on the bungee cords and a harness, and instructed him how to proceed.  (Wallace Decl.

16 ¶2.)  The Attendant instructed Plaintiff not to flip until he determined that it was safe to do so,

17 and Plaintiff did not flip until the Attendant gave him the go-ahead.  (*Id*.; *see also* Suppl.

18 Wallace Decl. at 3 (Defendant's operating procedure directing attendants to instruct the guests,

19 "please do not jump or flip until I have given you the clearance to do so").)  Before and during

20 the flip, Plaintiff gripped the bungee cords with outstretched arms.  (Wallace Decl. ¶2.)  Because

21 the Attendant was only fifteen feet away from Plaintiff and was observing him bounce on the

22 trampoline before instructing him it was safe to flip (*id*.), it can reasonably be inferred that the

23 Attendant saw Plaintiff gripping the bungee cords and that his arms were outstretched.  He then

24 instructed Plaintiff it was safe to flip.  (*Id*.)

25       This was contrary to the manufacturer's Operations and Maintenance Manual, which

26 stated, "Warning: never let anyone hold onto the bungee cords."  (Suppl. Wallace Decl. at 2.)

27 Consistently, Defendant's operating procedures directed that a black strap be attached to each

28 bungee cord and to the harness, and indicated that the strap was used for grip.  (*Id*. at 3.)  The

1 procedures directed the Attendant to say, "Please place your hold onto the black straps at all

2 times and do not let go." (*Id*., quoting operating procedures.)  Before clearing a guest to start

3 jumping, attendants were directed to perform a "safety check," which included "[e]nsur[ing]

4 guests [were] holding on with both hands." (*Id*., quoting operating procedures.)  As can be seen

5 in a photograph of a person strapped in the Equipment, if a person is holding onto the straps, as

6 opposed to the bungee cords, his arms are not outstretched and the elbows are bent at the side of

7 the person's body.  (Burton Decl. Exh. 1.)  Not only was Plaintiff not warned to refrain from

8 gripping the bungee cords or instructed by his Attendant to hold onto the black straps, the black

9 straps were not provided to him at all.  (*Id*. at 4; *see also* Wallace Decl. ¶2.)   Plaintiff was also

10 not instructed that his elbows should be at his side as opposed to having his arms outstretched.

11 (Wallace Decl. ¶2.)

12 When Plaintiff was at the apex of his first and only flip, "the bungee cords . . . pulled [his]

13 arms in a direction opposite to the gravitational pull of [his] legs, which was downwards, toward

14 the trampoline." (*Id*. ¶3.)  He felt pain in his left arm and immediately left the Equipment.  (*Id*.

15 ¶2.)  He later learned that he had torn a tendon.  (*Id*.)

16 Based on the foregoing, drawing all justifiable inferences in Plaintiff's favor, *see*

17 *Anderson*, 477 U.S. at 255, a jury could reasonably conclude that the manufacturer's and

18 Defendant's procedures were clear and easy to follow.  The procedures were provided to ensure

19 safety of the guests using the Equipment.  Compliance with the procedures was easy to ascertain

20 just by looking at the guest and the Equipment.  Because the Attendant instructed Plaintiff he

21 was safe to flip although the lack of compliance with safety procedures would be obvious to

22 anyone familiar with them and the Equipment, a jury could reasonably infer either that

23 Defendant allowed an untrained person to serve as the Attendant or that the Attendant simply did

24 not care about the outcome.  Either way, the jury could reasonably find Defendant's conduct to

25 constitute "a want of even scant care or an extreme departure from the ordinary standard of

26 conduct." *See Janeway*, 41 Cal.4th at 753-54.

27 Defendant also claims that Plaintiff has no evidence that the alleged gross negligence

28 caused his injury.  Negligence causation depends on whether the defendant's action or lack

1   thereof was a "substantial factor in causing the injury." *Rosencrans*, 192 Cal. App. 4th at 1087.

2   Plaintiff described in detail when and how his injury occurred.  (*See* Wallace Decl. ¶¶ 2-3.)

3   From his affidavit, it can reasonably be inferred that Defendant's alleged gross negligence was a

4   substantial factor in causing his arm injury.

5         Accordingly, Plaintiff raised a genuine issue of fact with respect to the gross negligence

6   limitation to the defense provided by the Release.  Because there is a genuine issue of fact

7   whether the Release bars Defendant's liability, its motion for summary judgment on the eighth

8   cause of action for gross negligence is **DENIED**.

9         As to the remaining negligence claims, public policy does not preclude enforcement of

10  the Release. *See Janeway*, 41 Cal.4th at 760.  The Release provided in pertinent part as follows:

11
12      In consideration of Participant being allowed to participate in these rock climbing
    and/or bungee trampoline activities, Participant EXPRESSLY AND FREELY
    AGREES as follows:

13
14      1.  That participation in the rock climbing and/or bungee jumping trampoline may
    be **DANGEROUS ACTIVITIES**, which involve known and unknown risk of
    serious personal injury, including death, and damage or loss of personal property.
15  Participant hereby agrees to ASSUME ALL RISK of serious personal injury,
    including death, and/or damage to or loss of personal property resulting from or in
16  any way connected with preparation for or participation in the Xtreme Zone rock
    climbing and/or bungee trampoline activities.

17      2.  To **RELEASE, WAIVE AND FOREVER DISCHARGE SEA WORLD,
    INC.**, its parent, subsidiaries, related and affiliated companies, officers, employees
18  and agents (the "Released Parties") from any and all claims (other than gross
    negligence), loss, demands, damages, expenses, lawsuits, causes of action and
19  judgments, whether foreseen or unforeseen, known or unknown, present or future,
    resulting from, arising out of or in any way connected with Participant's
20  preparation for or participation in the Xtreme Zone rock climbing and/or bungee
    trampoline activities, including, but not limited to, any claims for personal injuries,
21  including death, and/or damage to or loss of personal property, **whether caused in
    whole or in part by the NEGLIGENCE and/or FAULT of the Released
22  Parties** or otherwise.

23      3.  To **INDEMNIFY, DEFEND, and HOLD HARMLESS** the Released Parties
    from any and all claims (other than gross negligence), loss, demands, damages,
24  costs, expenses (including attorney's fees), lawsuits, causes of action and
    judgments for personal injuries, including death, and damage to or loss of personal
25  property, whether foreseen or unforeseen, present or future, known or unknown,
    resulting from, arising out of or in any way connected with Participant's
26  preparation for or participation in the Xtreme Zone rock climbing and/or bungee
    trampoline activities, **whether caused in whole or in part by the
27  NEGLIGENCE and/or FAULT of the Released Parties** or otherwise.
    . . .
28

09cv2785

**I HAVE READ AND UNDERSTOOD THE FOREGOING RELEASE AND ACCEPT AND AGREE TO ITS TERMS AND SIGN IT VOLUNTARILY.**

(Joint Statement at 2-4 (emphases in original); *see also* Ortiz Decl. Exh. C.)  "To be effective, . . . a release must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties.  The release need not achieve perfection."  *Benedek v. PLC Santa Monica, LLC*, 104 Cal. App. 4th 1351, 1356 (2002) (internal quotation marks and citations omitted).

Plaintiff argues that the Release he signed was ambiguous and therefore should not be enforced to bar Defendant's liability for negligence.  "The determination of whether a release contains ambiguities is a matter of contractual construction.  An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing."  *Benedek*, 104 Cal. App. 4th at 1357 (internal quotation marks and citations omitted).  Although Plaintiff complains that the Release is vague and overbroad in scope, he does not suggest any alternative meaning or point to any extrinsic evidence to assist in the interpretation.

> In the absence of extrinsic evidence, the scope of a release is determined by the express language of the release.  The express terms of the release must be applicable to the particular negligence of the defendant, but every possible specific act of negligence of the defendant need not be spelled out in the agreement.  When a release expressly releases the defendant from any liability, it is not necessary that the plaintiff have had a specific knowledge of the particular risk that ultimately caused the injury.  If a release of all liability is given, the release applies to any negligence of the defendant.  It is only necessary that the act of negligence, which results in injury to the releasor, be reasonably related to the object or purpose for which the release is given.  The issue is not whether the particular risk of injury is inherent in the recreational activity to which the release applies, but rather the scope of the release. [¶]  An act of negligence is reasonably related to the object or purpose for which the release was given if it is included within the express scope of the release.

*Benedek*, 104 Cal. App. 4th at 1357-58 (internal quotation marks and citations omitted).

The Release Plaintiff signed is clear, unambiguous and explicit.  *See Benedek*, 104 Cal. App. 4th at 1358-59, 1361.  It clearly expressed the parties' intent to release Defendant from all personal injury claims, with the exception of gross negligence, "resulting from, arising out of or in any way connected with [Plaintiff's] preparation for or participation in the . . . bungee trampoline activities, . . . whether caused in whole or in part by the negligence and/or fault of [Defendant] or otherwise."  (Joint Statement at 3 (emphases omitted).)  Plaintiff's claim that he

09cv2785

1   was injured while participating in bungee trampoline jumping and that his injury was caused by

2   Defendant's negligence falls within the unambiguous scope of the release.

3        Accordingly, Plaintiff has failed to raise a genuine issue whether the Release is

4   enforceable to bar Defendant's liability on the ordinary negligence claims as alleged in the fifth,

5   sixth and tenth causes of action.[2]   Defendant's summary judgment motion is therefore

6   **GRANTED** with respect to these claims.

7        Next, Defendant argues that Plaintiff's third cause of action for breach of express

8   warranties – intended use and fourth cause of action for breach of implied warranties – intended

9   use are also precluded by the Release.  Plaintiff did not address this argument in his opposition.

10  In this regard, Defendant's motion is **GRANTED** as unopposed.  *See* Civ. Loc. R. 7.1(f)(3)(b) &

11  (c).  In the alternative, it is granted because a valid release waives liability for express and

12  implied warranty.  *Booth v. Santa Barbara Biplanes, LLC*, 158 Cal. App. 4th 1173, 1181 (2008)

13  (implied warranty); *Westyle v. Look Sports, Inc.*, 17 Cal. App. 4th 1715,1748-49 (1993) (express

14  and implied warranty).

15       Defendant also maintains that Plaintiff's remaining product liability claims, first cause of

16  action for strict products liability – design defect and second cause of action for strict products

17  liability – failure to warn,[3] should be dismissed because Defendant is not subject to products

18  liability.  Plaintiff argues that Defendant is subject to liability because it leased the Equipment to

19  Plaintiff for a fee and, alternatively, because it provided Plaintiff with a product and a service.

20       The doctrine of strict products liability applies to manufacturers, retailers, and "others

21  similarly involved in the vertical distribution of consumer goods, including lessors of personal

22  property . . .."  *Ontiveros v. 24 Hour Fitness Corp.*, 169 Cal. App. 4th 424, 430-31 (2008) (citing

23  cases).  The relevant "distinction for purposes of the products liability analysis [is] between a

24  transaction where the primary objective is the acquisition of ownership or use of a product and

25

26       [2]     Because these claims are barred by virtue of the release, the court need not address
    the issue whether they are also barred by primary assumption of the risk.

27       [3]     Defendant included the fifth and sixth causes of action for negligent products
28  liability in this argument.  The court need not consider these claims and related arguments in this
    context because they were found precluded by the Release.

1   one where the dominant purpose is to obtain services." *Id*. at 431 (internal quotation marks,

2   citation and ellipsis omitted).  Accordingly, "[i]n a given transaction involving both products and

3   services, liability will often depend upon the defendant's role." *Id*. at 432.  Plaintiff admits that

4   Defendant provided him with both products and services when he participated in bungee

5   trampoline jumping.  (*See* Opp'n at 13.)

6        The facts of this case as presented by Plaintiff's evidence are analogous to the facts in

7   *Ontiveros* and *Ferrari v. Grand Canyon Dorries*, 32 Cal. App. 4th 248 (1995).  In *Ferrari* a

8   white water rafting operator provided, for a fee, a raft, white water rafting safety instructions,

9   and guides for the activity.  *Ferrari*, 32 Cal. App. 4th at 251.  Plaintiff claimed he was injured

10  because the raft was defective, arguing, like Plaintiff here, that the raft was a product and that the

11  defendants were subject to strict liability as licensors of the raft.  *Id*. at 258.  The court granted

12  summary judgment on the product liability claim, finding that the predominant purpose of the

13  transaction was to provide a service rather than a product in that the white water rafting

14  equipment was incidental to the service.  *Id*. at 259 ("Defendants did not provide plaintiff with a

15  raft for her to use.  They provided a service, *i.e.*, recreational raft transportation . . ..  Defendants

16  provided all the materials for the trip, instructions on rafting safety, and guides to perform the

17  labor and conduct the activities.  Use of the raft . . . was merely an incident to this service.").

18       In *Ontiveros* a fitness club member was injured while using exercise equipment and sued

19  the defendant for strict products liability.  *See* 169 Cal. App. 4th at 428, 434.  The membership

20  agreement provided, among other things, that the defendant was providing "recreational

21  services."  *Id*. at 427.  The plaintiff claimed she never availed herself of any services provided by

22  the defendant, but just used the equipment without any assistance, training or instruction from

23  the defendant's staff.  *Id*. at 434-35.  In affirming summary judgment for the defendant, the court

24  held that regardless of whether the plaintiff availed herself of the defendant's services, the

25  dominant purpose of the agreement between the parties was the provision of fitness services, and

26  the defendant therefore could not be held liable for strict products liability.  *Id*. at 426, 435.

27       Here the Release stated that was "[i]n consideration for [Plaintiff] being allowed to

28  participate in . . . bungee trampoline activities."  (Joint Statement at 2.)  Nothing in the Release

1    indicates that it was merely for Equipment rental.  Plaintiff presented no evidence to support this

2    assertion[4] or the assertion that the dominant purpose of the agreement allowing Plaintiff to

3    participate in bungee trampoline activities was to provide Plaintiff with the Equipment.  To the

4    contrary, Plaintiff's evidence shows that, in addition to using the Equipment, he was also

5    provided with and relied on the instructions and cues from the Attendant who was assigned to

6    Plaintiff individually.  (Wallace Decl. ¶¶ 2 & 5.)  According to Plaintiff, the Equipment was

7    provided to him for a "*guided* experience."  (*Id.* ¶ 5 (emphasis in original).)  Based on the

8    foregoing, Plaintiff failed to raise a genuine issue whether the dominant purpose of the

9    transaction was to  use a product, as opposed to obtain a service.  Accordingly, Defendant's

10   motion for summary judgment on the first and second causes of action for strict products liability

11   is **GRANTED**.

12        Finally, Defendant requests attorney's fees based on the indemnity provision in the

13   Release.  (*See* Joint Statement at 3.)  Plaintiff opposes the request, relying on *Myers Bldg. Indus.,*

14   *Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 962-63, 965-66 (1993) and *Bldg. Maint. Serv.*

15   *Co. v. AIL Sys., Inc.*, 55 Cal. App. 4th 1014, 1029-30 (1997), which express the principle that

16   indemnity clauses generally apply to third party claims and not to claims between the contracting

17   parties themselves.  Defendant does not disagree.  Furthermore, two claims survive Defendant's

18   summary judgment motion.  Therefore, to the extent Defendant may be entitled to any attorney's

19   fees, its request is premature.  Based on the foregoing, the request for attorney's fees is

20   **DENIED**.

21        For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**

22   with respect to the first cause of action for strict products liability – design defect, second cause

23   of action for strict products liability – failure to warn, third cause of action for breach of express

24   warranties – intended use, fourth cause of action for breach of implied warranties – intended use,

25   fifth cause of action for negligent products liability – design defect, sixth cause of action for

26

27        [4]    Plaintiff's and Defendant's affidavits, which each respectively contain conclusory
28   statements that the Equipment was, or was not, leased to Plaintiff are insufficient to either
     support or refute the assertion.  (*See* Wallace Decl. ¶ 5, Burton Decl. at 2.)

1 | negligent products liability – failure to warn, and tenth cause of action for negligence.

2 | Defendant's motion is **DENIED** in all other respects.

3 | **IT IS SO ORDERED**.

4 |

5 | DATED:  August 16, 2011

6 |

7 | M. James Lorenz
United States District Court Judge

8 | COPY TO:

9 | HON. RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

10 |

ALL PARTIES/COUNSEL

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

09cv2785